JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Russell Lang ("Lang"), appeals his convictions, rendered after a bench trial, of two counts of gross sexual imposition, one count of voyeurism, and two counts of disseminating matter harmful to a juvenile. Lang maintains that the evidence was insufficient to sustain the convictions, the convictions were against the manifest weight of the evidence, he was denied effective assistance of counsel, and that the trial court committed plain error in admitting irrelevant and prejudicial evidence. For the following reasons, we affirm.
 {¶ 2} The testimony at trial revealed the following. The victim, T.A., [1] testified that Lang, her mother's boyfriend, began sexually abusing her in 2001, when she was nine years old. At the time, Lang lived with the victim, her mother, and the victim's two siblings. According to T.A., the abuse continued until 2004, at which time Lang moved out. The victim testified that her mother would often leave her and the other children home alone with Lang, and it was then that the abuse occurred. According to the victim, she trusted Lang and called him "dad."
 {¶ 3} T.A. described the abuse, testifying that Lang would get in bed with her while she watched television in her mother's room, and insert his fingers into her vagina and touch her vagina, breasts, and buttocks. She testified that Lang did this to her numerous times. *Page 4 
T.A. also described instances when Lang had her touch his penis and he masturbated on top of her with his pants off.
 {¶ 4} T.A. described that she would cry, but Lang threatened that if she told anyone of the abuse, no one would believe her and the accusation would hurt her mother. The victim testified that she did not tell anyone of the abuse because of Lang's threats. The victim's mother saw Lang, however, masturbating on his knees while looking through a bathroom keyhole as T.A. was getting dressed. The mother kicked Lang out of the house; the three children remained in the home with her.
 {¶ 5} Because of another circumstance, however, the victim and her siblings were removed from their mother's custody, and all three children resided together in foster care. The victim eventually gave details of the abuse[2] when she learned that her siblings were returning to Lang's custody. T.A. testified that she told of the abuse at that time because she feared the same thing would happen to her siblings.
 {¶ 6} Lang testified at trial, and maintained that the victim was making up the allegations because she was jealous of her siblings, who were his biological children. He further testified that when T.A. was nine-years-old, she became promiscuous and would act inappropriately toward him and other children. Lang denied looking at the victim through *Page 5 
the bathroom keyhole, and explained that he had dropped some cigarettes on the floor and was picking them up when the victim's mother saw him.
 {¶ 7} According to Lang, he believed that the victim's behavior stemmed from her having been abused by her grandfather, who was convicted of molesting children. The lead detective on this case testified, however, that the victim was not one of the named victims in the grandfather's case and was not named as a victim in any prior sexual abuse investigations.
 {¶ 8} In his first assignment of error, Lang argues that the State failed produce sufficient evidence to sustain his convictions.
 {¶ 9} Upon review for sufficiency, it is this court's duty to determine whether the State has met its burden of production at trial.State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52. A sufficiency challenge raises a question of law. In considering such a challenge, this court does not determine whether the State's evidence is to be believed, but instead determines whether the evidence supports a conviction against the defendant. Id. The inquiry here is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} R.C. 2907.05, governing gross sexual imposition, provides in relevant part, "no person shall have sexual contact with another, not the spouse of the offender * * * when * * * the other person * * * is less than thirteen years of age, whether or not the offender knows the *Page 6 
age of that person." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttocks, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 11} T. A. testified that Lang touched her, and had her touch him, in a sexual manner numerous times when her mother was not home. These incidents of inappropriate sexual contact that Lang had with the victim occurred when she was under 13 years of age. On this record, the evidence was sufficient to sustain the gross sexual imposition convictions.
 {¶ 12} R.C. 2907.31 governs disseminating matter harmful to a juvenile and provides in relevant part that "no person * * * shall recklessly exhibit, or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles."
 {¶ 13} Although Lang does not make any specific argument in regard to the sufficiency of the evidence for the disseminating conviction as required by App. R. 16(A)(7), we nonetheless find his general contention that the evidence was insufficient without merit. This court has previously held that "masturbating in front of juveniles constitutes a `performance.'" State v. Colegrove (2000), 140 Ohio App.3d 306, 313, citing State v. Hanna (May 18, 1988), Lorain App. No. 4281. The victim in this case testified that, on several occasions, Lang masturbated on top of her. That evidence was sufficient to sustain the disseminating convictions. *Page 7 
 {¶ 14} R.C. 2907.08, governing voyeurism, provides in pertinent that "[n]o person shall for the purpose of sexually arousing or gratifying the person's self * * * surreptitiously invade the privacy of another, to spy, or to eavesdrop on another."
 {¶ 15} Lang contends that there was insufficient evidence to support his voyeurism conviction, because the victim never testified that she saw him looking through the keyhole. Lang's argument, however, ignores that secrecy from the victim is implicit in voyeurism. For example, a defendant's convictions on multiple sexual offenses, including voyeurism, was upheld by the Eleventh Appellate District in a case where the defendant, unbeknownst to the victims, set up a video camera to record incidents in his stepson's bedroom and use of a bathroom during a graduation party. The recordings included instances when the stepson and his 17-year-old girlfriend were in the stepson's room engaging in sexual activity. State v. Santoriella, Trumbull App. No. 2004-T-0067,2006-Ohio-2010.
 {¶ 16} The testimony in this case was that the victim's mother saw Lang looking through the bathroom keyhole and masturbating while the victim was in the bathroom getting dressed. That testimony was sufficient to sustain the voyeurism conviction.
 {¶ 17} In light of the above, there was sufficient evidence to sustain the gross sexual imposition, disseminating, and voyeurism convictions, and the first assignment of error is overruled.
 {¶ 18} For his second assignment of error, Lang argues that his convictions were against the manifest weight of the evidence. *Page 8 
 {¶ 19} In a manifest weight challenge, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, paragraph three of the syllabus.
 {¶ 20} In this assignment of error, Lang essentially argues that the victim's version of events was not credible, and his was. Upon review, however, mindful that the trial court is in the best position to assess witness credibility, [3] we find that the court did not create a manifest miscarriage of justice. For the reasons already discussed in our resolution of the first assignment of error, the convictions were not against the manifest weight of the evidence. The second assignment of error is overruled.
 {¶ 21} In his third assignment of error, Lang contends that he was denied the effective assistance of counsel. Specifically, he argues that his counsel was ineffective for failing to object to the introduction and admission of a poem written by the victim and statements made to the police by the victim and her uncle.[4] *Page 9 
 {¶ 22} In order to substantiate a claim of ineffective assistance of counsel, Lang is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of his trial would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 23} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 24} Lang contends that the victim's poem was "completely irrelevant" and had "absolutely no probative value." Upon review, we disagree. The poem related the victim's feelings about the abuse and corroborated much of her testimony. Counsel, therefore, was not ineffective by not objecting to the victim reading it or its admission.
 {¶ 25} Similarly, we find Lang's argument that his counsel was ineffective by not objecting to the admission of the police reports to be without merit. Both the Sixth Amendment Confrontation Clause and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to cross-examine witnesses who testify against him. See, e.g., State v. Self (1990), 56 Ohio St.3d 73, 78, 564 N.E.2d 446, citing Henderson v. Maxwell (1964), 176 Ohio St. 187, 188,198 N.E.2d 456. The admitted reports were question and answer sessions of the victim and her uncle. Both the trial testimony of the victim and her uncle essentially mirrored the contents of the statements. The admission of hearsay does *Page 10 
not violate the Confrontation Clause if the declarants (here, the victim and her uncle) testify at trial. See California v. Green (1970),399 U.S. 149, 157-158, 90 S. Ct. 1930, 26 L. Ed. 2d 489; State v.Keenan, 81 Ohio St.3d 133, 142, 1998-Ohio-459, 689 N.E.2d 929. Thus, the trial court did not violate Lang's constitutional right of confrontation. Moreover, in a bench trial, we presume that the trial court relied on only relevant, material, and competent evidence in arriving at its judgment absent a showing to the contrary. State v.Richey, 64 Ohio St.3d 353, 357, 1992-Ohio-44, 595 N.E.2d 915.
 {¶ 26} In light of the above, the third assignment of error is overruled.
 {¶ 27} Finally, in his fourth assignment of error, Lang contends that the trial court committed plain error by admitting the poem and the statements.
 {¶ 28} Crim. R. 52 (B) defines plain error as "error or defects affecting substantial rights [that] may be noticed although they were not brought to the attention of the court." "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Appling (May 21, 1998), Cuyahoga App. No. 72719, at 13.
 {¶ 29} As already discussed, the victim's poem was relevant and probative in that it expressed her feelings about the abuse and corroborated much of her trial testimony. Similarly, the victim's and her uncle's statements to the police essentially mirrored their trial testimonies. On this record, therefore, the outcome of the trial would not have been different without that evidence, and hence, there was no plain error. The fourth assignment of error is overruled. *Page 11 
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, P.J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY
[1] In accordance with this court's policy of not identifying victims of sex-related offenses, we refer to the victim by her initials.
[2] T.A. testified that she did not go into the details of the abuse with her mother after the "keyhole" incident, because she knew her mother wanted to involve the police and she did not, it was embarrassing, and she did not want to hurt her mother.
[3] State v. DeHass (1967), 10 Ohio St. 2d 230, paragraph one of the syllabus.
[4] The victim's mother died prior to trial. Her uncle, who the mother called in an "hysterical" state upon seeing Lang looking at the victim through the bathroom keyhole, testified about the incident at trial. *Page 1